

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

JOSE GONZALES III,
Petitioner,

v.

THE STATE OF TEXAS,
Appellee.

PETITION FOR DISCRETIONARY REVIEW

FROM THE COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CAUSE NO. 13-13-00011-CR.

FILED IN
COURT OF CRIMINAL APPEALS

AUG 05 2015

Abel Acosta, Clerk

ORAL ARGUMENT REQUESTED

TABLE OF CONTENTS

| | PAGE NO. |
|---|---|
| TABLE OF CONTENTS | I. |
| INDEX OF AUTHORITIES | II-IV. |
| STATEMENT REGARDING ORAL ARGUMENT | V. |
| STATEMENT OF THE CASE | VI. |
| STATEMENT REGARDING PROCEDURAL HISTORY | VII. |
| GROUNDS FOR REVIEW | VIII-IX. |
| ARGUMENTS AND AUTHORITIES | 1-16. |
| CONCLUSION | 16. |
| PRAYER FOR RELIEF | 16. |
| CERTIFICATE OF SERVICE | 16. |
| APPENDIX | END. |

## INDEX OF AUTHORITIES

TEXAS CASE: PAGE NO.

BELL v. STATE, 356 S.W.3d 528 .......... 1.

DRAKE v. STATE, 686 S.W.2d 935,944 .......... 7.

ERVIN v. STATE, 991 S.W.2d 804,814 .......... 3.

EX PARTE CASTILLO, 432 S.W.3d 457 .......... 4,5.

EX PARTE CAVAZOS, 203 S.W.3d 333 .......... 4,5.

EX PARTE DUFFY, 607 S.W.2d 507 .......... 16.

EX PARTE RATHNELL, 717 S.W.2d 33,36 .......... 5.

GIRDY v. STATE, 213 S.W.3d 315,319 .......... 3.

GARCIA v. STATE, 919 S.W.2d 370,381 .......... 2.

HOLLY v. STATE, 469 S.W.2d 136,137 .......... 7.

LACY v. STATE, 160 TEX.CRIM.95,267 S.W.2d 139,141 .......... 7.

MENDOZA v. STATE, 1 S.W.3d 829 .......... 1.

PHILLIPS v. STATE, 787 S.W.2d 391-95 .......... 5.

RUSSEL v. STATE, 146 S.W.3d 705,714 .......... 11.

VAUGHN v. STATE, 239 S.W.3d 351 .......... 4.

VON BYRD v. STATE, 569 S.W.2d 883,890-91 .......... 11.

WILLIAMS v. STATE, 897 S.W.2d 351, CERT.DENIED 516 U.S. 946 .......... 9-10.

YGLESIAS v. STATE, 252 S.W.3d 733, PDR REV.REF'D .......... 1.

CRAWFORD v. STATE, 685 S.W.2d 343,349-50 .......... 11.

LANDERS v. STATE, 957 S.W.2d 558,560 .......... 5.

FEDERAL CASES:

MAYOLA v. ALABAMA, 623 F.2d 992,998 (5TH CIR.1980) .......... 11.

U.S. v. DURHAM, 287 F.3D 1297,1304 (11TH CIR.2002) .......... 2.

SUPREME COURT CASES:

BENTON v. MARYLAND, 395 U.S. 784 .......... 3.

BLOCKBURGER v. U.S., 284 U.S. 294 .......... 3.

BROWN v. OHIO, 432 U.S. 161 .......... 3.

FARETTA v. CALIFORNIA, 422 U.S. 806,821 .......... 12.

GRADY v. CORBIN, 495 U.S. 299 .......... 3.

ILLINIOS V. VITALE, U.S. 410 .......... 3.

STRICKLAND, 466 U.S. 688 .......... 6,7,8,12,16.

TRAVINO v. THALER, 569 U.S.__ (2013) .......... 16.

UNITED STATES v. CRONIC, 466 AT 656-57 .......... 12.

U.S. v. DIXON, 509 U.S. 688 .......... 3.

AUTHORITIES CONT:

PAGE NO.

TEXAS CONSTITUTION:

TEX.CONST. ARTICLE 1 § 14 .................................... 3.

UNITED STATES CONSTITUTION:

U.S.C.A. CONST. AMEND 5 ....................................3.

U.S.C.A. CONST. AMEND 6 ....................................1,2,6,8,12, 11,13.

U.S.C.A. CONST. AMEND 14 ....................................1,2,6,8,12, 11,13.

TEXAS STATUTES:

V.T.C.A. PENAL CODE § 19.03 (a)(2)..........................4,7.

V.T.C.A. PENAL CODE § 30.02(a)(2)..........................4.

V.T.C.A. PENAL CODE § 22.02 ..........................5.

V.T.C.A. PENAL CODE § 8.01 ..........................13,14,15.

V.T.C.A. PENAL CODE § 3.04 (a)..........................7.

FAMILY CODE § 71.003 ..........................5.

FAMILY CODE § 71.0021 (b)..........................5.

FAMILY CODE § 71.005 (b) ..........................5.

TITLE 7 PENAL CODE ..........................7.

TITLE 5 PENAL CODE..........................7.

V.T.C.C.P. ART.1.10(1)..........................3.

V.T.C.C.P. ART.1.14..........................8.

V.T.C.C.P. ART.21.24..........................6,7.

V.T.C.C.P. ART.31.01..........................11.

V.T.C.C.P. ART.31.03(a)..........................9.

V.T.C.C.P. ART.42.12 (d)(8)(c)..........................12.

V.T.C.C.P. ART.46.03..........................14.

CRIMINAL LAW:

CRIMINAL LAW KEYNOTE-144..........................4.

CRIMINAL LAW KEYNOTE-620.(3)..........................6.

CRIMINAL LAW KEYNOTE-641.13(2)..........................7.

CRIMINAL LAW KEYNOTE-637.2..........................1.

CRIMINAL LAW KEYNOTE-773..........................13.

INDICTMENT AND INFORMATION KEYNOTE-127..........................6.

INDICTMENT AND INFORMATION KEYNOTE-129(1)..........................6.

OTHER STATUTES:

V.T.C.A. PENAL CODE § 3.01(a)..........................7.

AUTHORITIES CONT:

PAGE NO.

88 P.A.291 (1879)..........................................16.

## STATEMENT REGARDING ORAL ARGUMENT

PETITIONER URGES THE COURT TO ALLOW ORAL ARGUMENT FOR THE FOLLOWING REASONS; TO WIT:

Petitioner's claim of double jeopardy is based on the **Cavazos case 203 S.W.3d 333 (Tex.Crim.App.2006)** and the **Castillo case that the** State cited in its brief: **Ex parte Castillo, 432 S.W.3d 433 (Tex.App. -San Antonio 2014,no pet.h.).**

Furthermore, this error is an error whether objected to or not. Petitioner briefed said error in his Pro/se brief which the 13th Court of Appeals failed to adjudicate on its merits.

Because their is a misjoinder issue in multiple count indictment Petitioner needs futher redress from the Court of Appeals to address said grounds. Also because the record was fully developed before the Court Petitioner claimed ineffective assistance of counsels on both direct appeal as well as trial attorneys. Petitoner should be given the full adjudication of ineffective assistance of counsel as outlined in **Trevino v. Thaler,569 U.S.__(2013).** Furthermore, Petitioner urges the Court for oral argument that Petitioner's attorney on direct appeal filed **Anders brief** and motion to withdraw, the Court assigned Stephen W. Byrne as attorney who filed motion to withdraw based on ill-health and no **Ander's brief.** Because he was the attorney of record the 13th Court of appeals was in error and abused their discretion by ruling on **Anders brief** filed by attorney Fred Jiminez whom was no longer Petitoner's attorney of record and such Anders brief filed was moot by operation of law. Because the remainder of the errors are based on ineffective assistance of counsel Petitioner urges the Court to allow oral argument.

## STATEMENT OF THE CASE

On December 12, 2011 Jose Gonzales III, hereinstyled Petitioner was charged with Capital Murder in the course of committting a Burglary of a Habitation of one Leslie Morin, by shooting Leslie Morin with a firearm. In Count II, Petitioner was charged with Burglary of a Habitation on or about December 12, 2011 in Nueces County, Texas. There and then Intentionally and knowingly enter a habitation without the effective consent of Vidal Rodriguez who had greater right to said property, and attempt to commit or committed the felony offense of Aggravated Assault with a Deadly Weapon.

Petitioner was employed as a Alice police officer in the City of Alice, Texas on the day of the offense. In a high profile trial Petitioner was convicted on both counts by a biased and highly prejudiced jury.

The court sentenced Petitioner to life with out parole on count I, and life with parole on count II. Wherein said convictions are constutionally infirm. The trial was overwhelmed by the media and public pressure. Change of venue was warranted.

## STATEMENT REGARDING PROCEDURAL HISTORY

Petitoner was charged by indictment with one count of Capital murder during the course of committing a burglary of a habitation, and one count of burglary of a habitation with the intent to commit aggravated assault or a felony. A jury convicted him of both offenses as alleged in the indictment on December 6, 2012. The Court assessed punishment at life without the possibility of parole for the Capital Murder charge and life in the Institutional Division of the Texas Department of Criminal Justice-CID for the Burglary of a habitation charge. The Petitioner filed notice of appeal on December 10, 2012. Petitioner's attorney of record Fred Jiminez filed an Anders brief on July 18, 2013. On July 24, 2013 Attorney Fred Jiminez filed a motion to withdraw as attorney. On August 16, 2013 the trial court appointed Stephen W. Byrne to represent Petitoner. On September 8, 2013 Stephen W. Byrne filed motion to withdraw citing ill-health and requested the court to appoint new counsel. No Anders brief was filed and no new attorney was appointed. Petitioner filed a motion in the 13th Court of Appeals for trial record. Petitioner filed his Pro/se brief on May 23, 2014, along with request for oral argument. Furthermore, Petitioner filed a motion in the 13th Court of appeals for his trial attorney to produce the psychological report generated from his court ordered evaluation. Such report was never made part of the record. The State was ordered to file their brief. The case was due for submission on August 13, 2014. The State filed their brief on August 12, 2014 with a motion for an extension of time. Petitioner filed a motion to hold said appeal in abeyance in order to respond to State's brief. On August 14, 2014 the Court affirmed in an unpublished unsigned boilerplate opinion by Justice Dori Contreras Garza, which appear to be the work of a clerk or paralegal employed by said justice refering soley to the Anders brief that attorney Fred Jiminez submitted that should have been ruled moot. Petitioner filed motion for rehearing on August 30, 2014. The State filed brief agreeing with Petitioner's claim of double jeopardy wherein the San Antonio Court rendered relief for the exact same issue. Rehearing was denied on January 21, 2015.

GROUNDS FOR REVIEW

GROUND ONE: PAGE NO.

TRIAL COURT ERRED IN ALLOWING PETITIONER TO BE TRIED IN SHACKLES IN VIOLATION OF U.S.C.A. CONST. AMENDS 6TH AND 14TH. TRIAL COURT INFRINGED UPON PETITIONR'S PERSUMPTION OF INNOCENCE, AND HIS RIGHT TO COUNSEL. INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT OBJECTING TO PETITIONER BEING SHACKLED AND PROCEDURALLY DEFAULTING PETITIONER'S CLAIM.

GROUND TWO:

THE STATE COMMITTED DOUBLE JEOPARDY WHEN IT PROSECUTED PETITIONER FOR MULTIPLE BURGLARIOUS ENTRIES WHERE THERE WAS ONLY ONE UNLAWFUL ENTRY, IN VIOLATION OF TEXAS CONSTITUTION ARTICLE I,§14 AND U.S.C.A. CONST. AMEND 5TH, ALSO V.T.C.C.P. ART. 1.10.

GROUND THREE:

INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT OBJECTING TO MISJOINDER OF TWO DISTINCT OFFENSES IN THE SAME INDICTMENT. COUNSEL DID NOT FILE PRETRIAL MOTIONS, NOR OBJECT DURING TRIAL TO MISJOINDER OF OFFENSES THEREBY EFFECTING THE OUTCOME OF TRIAL, SUCH OBJECTIONS WOULD HAVE RESUTED IN DIFFERENT OUTCOME.

GROUND FOUR:

INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL'S FAILURE TO FILE MOTION TO QUASH AFFIDAVIT AND INFORMATION THAT WAS UNSIGNED, HENCE, PROSECUTION COMMENCED UPON THE STRENTGH OF AN UNSIGNED INFORMATION.

GROUND FIVE:

INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT FILING MOTION FOR CHANGE OF VENUE IN HIGH PROFILE CRIMINAL PROSECUTION IN ACCORDANCE WITH V.T.C.C.P. ART.31.03, WAIVER BY ATTORNEY PROCEDURALLY DEFAULTED PETITIONER'S RIGHT TO RAISE CLAIM FOR APPELLATE REVIEW.

GROUND SIX:

TRIAL JUDGE ABUSED HER DISCRETION BY NOT ORDERING CHANGE OF VENUE AFTER IT BECAME IMPOSSIBLE TO SEAT A JURY THAT WAS UNBAISED IN HIGH PROFILE CASE.

GROUND SEVEN:

INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL ABANDONED PETITIONER, ACTING AS NO COUNSEL AT ALL, MERELY FRIEND OF COURT.

PETITIONER'S COUNSEL FOR DIRECT APPEAL FRED JIMINEZ COMMITTED INEFFECTIVE ASSISTANCE OF COUNSEL BY PLACING A FRAUD BEFORE THE COURT BY FILING FRIVOLOUS BRIEF, FOR SUCH ACTION WERE MOTIVATED BY POLITICAL ASPIRATIONS AND NEPOTISM, AND THE HIGH PROFILE NATURE OF THE CASE. THE COURT ASSIGNED STEPHEN W. BYRNE AS APPEAL ATTORNEY, RENDERING FRED JIMINEZ'S BRIEF MOOT BY OPERTION OF LAW. STEPHEN W. BYRNE FORCED INDIGENT PETITIONER TO FILE PRO/SE BRIEF WHO IS NOT EDUCATED IN THE LAW.

GROUND NINE: PETITIONER'S COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT RAISING AN AFFIRMATIVE DEFENSE OF TEMPORARY INSANITY, AFTER ATTORNEY MADE QUESTION REGARDING PETITIONER'S MENTAL STATE AT THE TIME OF OFFENSE.

COMES NOW, JOSES GONZALES III, HEREINSTYLED, PETITIONER, FILES THIS PETITION FOR DISCRETIONARY REVIEW IN ACCORDANCE WITH TEXAS RULES OF APPELLATE PROCEDURE RULE 68. TO WIT:

## ARGUMENT

GROUND ONE:

**TRIAL COURT ERRED IN ALLOWING PETITONER TO BE TRIED IN SHACKLES IN VIOLATION OF U.S.C.A. CONST. AMENDS 6TH & 14TH. TRIAL COURT INFRINGED UPON PETITIONER'S PERSUMPTION OF INNOCENCE, AND HIS RIGHT TO COUNSEL. INEFFECTIVE ASSISTANCE OF COUNSEL FOR OBJECTING TO PETITIONER BEING SHACKLED AND THEREBY PROCEDURALLY DEFAULTING PETITIONER'S CLAIM.**

Petitioner contends the trial court abused its discretion in requiring Petitioner to wear shackles during trial, and the wearing of shackles was not harmless. (RR.Vol.3, Pg.126,Line 3-13). From this colloquy between the court and the Petitioner restraints as articulated by the court line 8, does not justify shackling of the Petitioner. The Court of Criminal Appeals has repeatedly critized Nueces County Courts for rountinely shackling defendants without articulating a need for restraints. **Criminal Law Keynote-637.2: Grounds and circumstances affecting the use of restraints in general.** Essential State interest justifying shackling a defendant is found where there is a danger of escape or injury to the jury, counsel, or other trial participants. **U.S. v. Banegas, 600 F.3d 342. Criminal Law Keynote-637.2:** Rountine shackling of defendants is prohibited. **Bell v. State, 356 S.W.3d 528, rehearing overruled. (Tex.App.Houston[14th Dist.]2008).** Generally a defendant has right to be tried without being shackled, whether or not the shackles are visible to the jury; however, the trial court has discretion to order restriants if there is a showing of a manifest need or execeptional circumstances, such as when a defendant poses a threat to himself or others. **Yglesias v. State, 252 S.W.3d 733, PDR rev. ref'd (Tex.App. Houston [14th Dist.] 2007).** Requiring a defendant to be tried in shackles without adequate reasons is repugnant to the spirit of the law and ideas of justice whether those restriants visible or unseen. **Grayson v. State, 192 S.W. 3d 790, also see, Mendoza v. State, 1 S.W.3d 829 (Tex.App.-Corpus Christi 1999)(Reversed Aug.31,1999).** The Court of Criminal Appeals admonished Nueces County Courts for rountinely shackling defendants. Peitioner was required to stand every time the jury exited or entered the courtroom as well as move to a different courtroom for further vior dire. Said restri-

-ants were visible to the jurors. See Vol.3.pg.126. The Petitioner was denied the persumption of innocence and every aspect of due process under the **U.S. Const.14th Amend, 6th Amends, Equal Protection Clause.**

**Ineffective Assistance of Counsel: To Wit:** Because Petitioner's counsel did not object to petitioner being shackled, said counsel procedurally defaulted said claim for purpose of appellate review and such deficient performance prejudiced the out come and because of this act and ommission there is a probability that the outcome would have been different. Shackling of Petitioner without a demonstrative need compromised the formal dignity of the court and judicial proceedings and lead to harmful collateral effects. Such effects cheifly included curtailing Petitioner's ability to communicate freely wwith counsel because of the physical limitations imposed by shackles and simply the distraction and embarrasment they caused the Petitioner. See, **United State, v. Durham, 287 F.3d 1297, 1304 (11th Cir.2002)** ("Even if the [shackles] placed on the defendant are visible to the jury, they still may... confuse the defendant, impair his ability to confer with counsel, and significantly affected the trial strategy he choose to follow.") . Petitioner's attorney made the following statement to the prospective jurors that tainted the whole trial process: I frankly, probably will not be spending any time questioning that type of evidence because as I told you right from the get go, Jose is in fact guilty of criminal homicide, the question is what sort of criminal homocide is he in fact guilty of? See, (Vol.3,pg.147,4-9). Because Petitioner was shackled he did not approve of such trial strategy, which made the trial process unfair and confused Petitioner, and impaired his ability to communicate, and significantly effected the trial strategy, wherein Petitioner was not informed of such trial strategy. Petitioner believed that temporary insanity would be the trial strategy and course his attorney would take. It appears that attorney's error for not objecting to shackling, along with the attorney's unprofessional error that believing that Petitioner was guilty and shackling implied dangerousness in the jurries mind, serverly infringed on Petitioners persumption of innocence, was defificent performance that reasonable effected the outcome of the case. Petitioner was made to stand for the jury on numerous occassions, not only were the shackles visible, but because of the movement, the chains were heard by the jurors. In such a high profile trial, here the errors originated from the trial court's saa sponte order, and trial court's reason for shackling the Petitioner are insufficient as a matter of law. See, **Garcia v. State, 919 S.W.2d 370,381 (Tex.Crim.App.-1994).** Because of errors appearing in the record PDR should be granted.

GROUND TWO:

**THE STATE COMMITTED DOUBLE JEOPARDY WHEN IT PROSECUTED PETITIONER FOR MULTIPLE BURGLARIOUS ENTRIES WHERE THERE WAS ONLY (1) UNLAWFUL ENTRY. IN VIOLATION OF TEXAS CONST. ARTICE 1§14 AND U.S.C.A. CONST. AMEND. 5TH AND V.T.C.C.P. ARTICLE 1.10. TO WIT:**

Petitioner was convicted in a single trial and given multiple punishments for the same conduct, thereby invoking the jeopardy clause in the U.S. Const. & the Texas Const. Petitioner was charged by indictment in Count I with comitting Murder in the course of a Burglary of a Habitation, and in Count II, Burglary of a Habitation with Intent to Commit Aggravated Assault or a Felony. In Art. 1.10 V.T.C.C.P. States: No person for the same offense shall twice be put in jeopardy of life or liberty; nor shall a person be again put upon for trial for the same offense; after a verdict of not guilty in court of competent jurisdiction. The rule is a State may not place a defendant in double jeopardy; U.S. Const. V; **Tex. Const. Art. I§14; Benton v. Maryland,** 395 U.S. 781 (1969). This means the State may not: (1) prosecute a defendant for the same offense after an acquittal; and (2) prosecute a defendant for the same offense after a conviction; or (3) obtain multiple punishments in a single trial for the same offense. **Illinios v. Vitale,** 477 U.S. 410 (1980); **Brown v. Ohio,** 432 U.S. 161 (1977). What we are concerned here is; "that Count I for Capital Murder is predicated on a burglarious entry in order to be upgraded to Capital Mureder. See, **Tex. Penal Code** § 19.03. Count II, under **Penal Code** § 30.02 Burglary of a Habitation Intent to Commit Aggravated Assault or a Felony. The "same elements" test found in **Blockburger v. U.S.,** 284 U.S. 299 (1932) questions whether the State is attempting to punish the defendant twice for the same offense. This test asks the Court to examine each of the statutes to determine whether each require a proof of a different element the other does not. The Court abandoned the "Same conduct" test by overrulling **Grady v. Corbin,** 495 U.S. 508 (1990), in **U.S. v. Dixon,** 509 U.S. 688 (1993). But in double jeopardy/multiple punishment claims, **Blockburger** is not the solo focus. **Ervin v. State,** 991 S.W.2d 804,814 (Tex.Crim.App.1999). If the Court has actual legislative intent of the two statutes, that intent is the critical factor. If not then look at **Girdy v. State,** 213 S.W.3d 315,319 (Tex.Crim.App.2006)(if the prosecution, in proving one element of one offense, also necessarily proves another charged offense; if so, there must be clear legislative intent to punish the offense seperately or multiple punishments are barred.)

**GROUND TWO CONT:**

The allowable unit of prosecution is the individual entry for burglary is not the number of individual crimes committed once the defendant makes the unlawful entry. **Ex parte Cavazos, 203 S.W.3d 333 (Tex.Crim.-App.2006). Vaughn v. State, 239 S.W.3d 351 (Tex.App.-San Antonio 2007).** Here we have Petitioner sentenced to multiple punishments for one unlawful entry. See, **Ex parte Castillo, 432 S.W.3d 457 (Tex.Crim.App.-San Antonio 2014, no pet.h.) Double Jeopardy Keynote-4:** Double jeopardy clause impose few, if any, limitations on the legislative power to establish and define the offense. **U.S.C.A. Const.5th Amend. Double Jeopardy Keynote-144:** Convictions for Capital Murder during the course of committing Burglary of a Habitation, and Burglary of a Habitation intent to commit a Felony (Aggravated Assault) violated double jeopardy clause; even thou there were two victims, the alloable unit of prosecution was the unlawful entry. Not the complainant, and the defendant was punished multiple times for a single entry. **U.S.C.A. 5; V.T.C.A. Pen. Code § 30.02 (a). Double Jeopardy Keynote-132.1:** The "most serious offense" which is retained when convictions violate double jeopardy clause is the offense of conviction which the greatest sentence was assessed; other factors such as the degree of the felony. range of punishment, and rules governing parole eligibility and awarding of good-conduct time, are not considerations; overrulling **Landers v. State, 957 S.W.2d 58, U.S.C.A. Amend 5.** The issue before us is convicting Petitioner of two burglarious entries each with a different complainant but arising from a single unlawful entry of a habitation constitute double jeopardy? The prosecutions theory in the charging instrument that Petitioner committed Capital Murder in the course of committing Burglary of a Habitation in Count I. The prerequisite of felony murder upgraded to capital murder is outlined in **V.T.-C.A. Penal Code § 19.03 (a)(2).** Wherefore without the burglarious entry Petitioner could only be convicted murder as defined. The integral part of the conviction in Count I is the burglary of a habitation. It was established at trial, that Petitoner kicked in the front door, shot at Vidal Rodriguez, then proceeded to the back bedroom and shot his estranged wife multiple times. See, (RR.Vol.4,pg.11-17. The theory of the indictment differed from the theory at trial. Wherein the capital murder was placed in a stratigic position of appearing first, when in fact it was the result of Count II, Burglary of a Habitation intent to commit a Felony (Aggravated Assault). Burglary of a Habitation is complete once the unlawful entry is made, without regard to whether the intended theft or felony is also completed. **V.T.C.A. Penal Code § 30.02 (a)(2), V.T.C.A.**

GROUND TWO CONT:

§ 22.02 Aggravated Assault (1) Causes serious bodily injury to another, including the person's spouse; or (2) Uses or exhibits a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by by **Sections 71.003, 71.0021 (b), 71.005 (b)**, an offense under this statute is a felony of the second degreeif; (to end of statute). The allowable unit of prosecution for assaultive offense is each complianant. See, **Phillips v. State, 787 S.W.2d 391-95(Tex.Crim.App.(1990)(Assault) Ex parte Rathnell, 717 S.W.2d 33,36(Tex.Crim.App.1986)(Voluntary Manslaughter).** Burglary, however is not an assaultive offense; rather, its placement within **Title 7** indicates that the legislature determined burglary to be crime against property. Thus the complainant is not the allowable unit of prosecution in burglary, rather, the allowable unit of prosecution is the unlawful entry. When a defendant is convicted of two or more offenses that are the "same" for double-jeporady purposes, our case law tells us that the conviction for the most serious offense is retained and the other conviction is set aside. See, **Landers v. State, 957 S.W.2d 558,559-60 (Tex.Crim.App.1997). Landers states:** that the "most serious" offense is determined by the degree of the felony range of punishment and sentence imposed. **Landers** is overruled by **Ex parte Cavazos'.** The third reason applies some what differently to the double-jeopardy context than the misjionder context, we fashioned a rule designed to best ascertain what offense the State would elected to proceed upon upon at the time of trial. We did so because, in the misjionder context the State is not permitted to prosecute both offenses at the same time. Hence our evaluation of the seriousness of the offense coming into play only when the range of punishment and the degree of the offense being the same. It is this very reason why Petitioner need competent legal counsel, for the complexity of such issue. Petitioner's counsel acted as No Counsel at All! We shall visit the misjionder doctrine in our next point of error. For the record reflects that double jeopardy has appeared from the record, to the degree that both sentences are equal in respect that Petitioner was sentenced to life on both Counts, and the Court has ruled in **Cavazos, 203 S.W.3d 333 (Tex.Crim.2006).** The most serious offense retained. In this case both sentences are equal, thereby jeopardy nullifying both. There being jeopardy appearing from the record, said convictions should be remanded and acquittal, or in lieu with instructions. See also, **Ex parte Castillo, 432 S.W.3d 457 (Tex.App.-San Antonio 2014, no pet. h.).**

GROUND THREE:

**INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT OBJECTING TO MISJIONDER OF TWO DISTINCT OFFENSES IN THE SAME INDICTMENT.**

**COUNSEL DID NOT FILE PRETRIAL MOTION NOR OBJECT DURING TRIAL TO MISJOINDER OF OFFENSES THEREBY EFFECTING THE OUTCOME OF TRIAL. SUCH OBJECTION WOULD HAVE RESULTED IN A DIFFERENT OUTCOME.**

**Criminal Law Keynote-620(3):** Mandatory serverance of offenses only applies to joinder of property offenses. **V.T.C.A. Penal Code § 3.06(a). Indictment and Information Keynote-127:** State is prevented in the presence of objection, from alleging more than one non-property offense in a single indictment, regardless of the number of transactions involved. **V.T.C.C.P. Art.21.24. Indictment and Information-Keynote-127,129 (1):** For State to avoid joinder problems, indictment for non-property offenses, whether arising from one transaction or seperate transactions, should contain only one Count in as many paragraphs as are necessary to allege various manner and means of committing the one alleged offense. **V.T.C.C.P. ART. 21.24 (a). Indictment and Information Keynote-196(7):** To avail himself of pleading limitations with respect to non-property offenses, defendant should file pretrial motion to quash indictment or urge, sometime during trial, that State make an election; failure to object will result in waiver of pleading requirements. **V.A.T.C.C.P. art. 21.24. Indictment and Information Keynote-127:** Indictment was invalid on basis of misjoinder where indictment alleged more than one nonproperty offense and property offense.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

**Petitioner's counsel not filing Motion to Sever offenses, nor Motion to Elect, nor Objecting to misjionder, resulted in Petitioner's claims to be procedurally defaulted for purposes of appellate review. Prejudiced the outcome of the trial, resulted in the convictions for two offenses for the same transaction which resulted in two life sentences. Because of counsels deficient performance there is a reasonable probability that the outcome would have been different. Such ommissions by the Petitioner's counsel gave the State a tactical advantage over Petitioner, which resulted in the trial being unfair and biasd jury. U.S.C.A. Const. Amend. 6 & 14**

Counsel's failure to file pretrial motion to quash, or object was far "below the range expected of reasonable, professional competent assistance of counsel." Counsel's performance thus, "did not measure up to the standard required in the holding in **Strickland, 466 U.S. 688(1984)**, and [if it had,] there is a reasonable probability that the results would have been different in the sentencing phase."

GROUND THREE CONT:

Under the applicable State prcedures there would have been an election, and Petitioner would not have to face two offenses under the same jury. Turning to the prejudice issue: **Counsel Abandoned His Client;** The mandatory severance under **§3.04 (a)**, applies to joinder of property offenses listed under **Title 7** of the **Penal Code. See, Waythe v. State, 533 S.W.2d 849 (Tex.Crim.App.1976).** Capital Murder is not a property offense. It is listed as an offense against the person under **Title Five** of the **Penal Code. V.T.C.A. Penal Code 19.03.** However, the right to force an election, which follows from implicit statutory restrictions relating to the manner in which non-property offenses may be joined in an indictment, is supported by precedent, it holds that the legilature, by its amendment of **art. 21.24**, has implicitly prevented the State from alleging, in a single indictment two or more nonproperty offenses if those offenses arose out of the same criminal "incident, act or transaction." Generally, "transaction" has come to mean a criminal event and the various particular offenses committed within that event. See, **Drake, supra, at pp.945-49, (Petitioner's original Brief and Appendix pg.16).** Thereby counsel abandoning his client in a critical stage of the proceeding resulted in inadequacy of representation. There being ineffective assistance of counsel appearing from the record, said cause should be reversed and remanded with instructions.

**INEFFECTIVE ASSISTANCE OF COUNSEL: COUNSEL'S FAILURE TO FILE MOTION TO QUASH AFFIDAVIT AND INFORMATION THAT WAS UNSIGNED; HENCE PROSECUTION COMMENCED UPON THE STRENGTH OF AN UNSIGNED INFORMATION. GROUND FOUR: TO WIT:** Petitioner's attorney failed to file motion to qaush the Information that does not have signature on it. We are left with the proposition that the case proceeded to a conconclusion with a documentation in the file to reflect that Mark Skurka or anyone else signed the Information charging Petitioner with an offense a further jurisdictional defect of itself. See, **Holly v.State, 469 S.W.2d 136,137(Tex.Crim.App.1970). See, Exhibit "A" Pet. Appelate Brief). T.C.C.P. art. 21.21(a), Lacy V.State, 160 Tex. Crim. 95, 267 S.W.2d 139,141(1948).** Because Petitoner is in need of atty. at every stage of the proceeding it is emphasized here that attorney's knowledge and skill of the law and practices of the criminal trial and proceedings. **Criminal Law Keynote-641.13(2):** Performance of defense counsel was not only unconstitutional unreasonable and ineffective, but counsel abandoned required duty of loyalty to his client; Counsel he acted with reckless disregard for his client's best interest and at times, appearantly to weaken his client's case. Just simply poor strategic choices. **U.S.C.A.**

**GROUND FOUR CONT:**

**Const. Amend. 6th.** It is emphasized that a "defendant need not show that counsel's deficient conduct more than likely altered the outcome of the case." Instead the defendant bears the burden of showing "that there is reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have come out different. A reasonable probability sufficient to undermine confidence in the outcome." **Id., 694, 104 S.Ct. at 2068, T.C.C.P. art.1.14 Waiver of Rights:** Punishing a lawyer's intentional and unintentional errors by closing the courthouse door to his client is both senseless and misdirected method of deterring the slight of State rules. It is senseless because unplanned and unintentional action action of any kind generally is not subject to deterrance; and to the extent that it is hoped that a threatend sanction addressed to the defense will induce greater care and caution on the part of trial lawyers, thereby forestalling negligent conduct and error. The potential loss of valuable State remedies would be sufficient to this end. And it is misdirected sanction because even if penalization of incompetence or carelessness will encourage more legal trianing and trial preperation , the Petitioner, as oppossed to his lawyer, hardly is the proper recipient of such a penalty. Espicially with fundamental constitutional rights at stake, no fictional relationship of principal-agent or the like can justify holding the criminal defendant accountable for the naked errors of his attorney. This is espicially true when so many indigent defendants are without any realistic choice in selecting who ultimately represents them at trial. Indeed, if responsibilty for error must be apportioned between the parties, it is the State through its attorney's admissions and certifications policies, that is more fairly held to blame for the fact that practicing lawyers too often are ill-equipped to act carefully and knowledgeably when faced with decisions governed by State procedural requirements. Hence, Petitioner agrees with the proper functioning of our system of criminal justice, necessarily places a heavy reliance on the professionalism and the judgment of trial attorneys. A system that ascribes absolute forefiture of Petitioner's constitutional claim where his lawyer manifestly excercise no professional judgment at all-where carelessness, mistakes, or ignorance is the explanation of the procedural defaults. It is regrettable that certain errors that might have been cured earlier had trial counsel acted expeditiously, must be corrected collaterally and belatedly. Hence, Petitioner's attorney was was deficient and such deficient conduct prejudiced the outcome of the trial. Because of attorney's acts and ommissions said cause should be reversed and remand with instructions.

GROUND FIVE:

**INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT FILING MOTION FOR CHANGE OF VENUE IN HIGH PROFILE CRIMINAL PROSECUTION IN ACCORDANCE WITH V.A.T.C.C.P. ART. 31.03. SAID WAIVER BY ATTORNEY ~~DEFAULTED~~ PETITIONER'S RIGHT TO RAISE GROUND FOR APPELLATE REVIEW.**

Petitioner complains that deficient performace by attorney defaulted his claim for appellate review, and prejudiced the outcome of trial. Petitioner an Alice police officer was the subject of extensive media coverage in the County and surrounding Counties wherein the instant offense took place. Furthermore, the Internet and Social Media followed said case. Petitoner was the subject of a documentary, wherein a series of local television stations broadcast the events and circumstances surrounding the case. See, **(App. Brief Exhibit "G"). Under art. 31.03 (a),** a change of venue may be granted in a felony or a misdemeanor case punishable by confinement on the written motion of the defendant. There was a dangerous combination against him instituted by very influential persons, by reason of which he canot expect a fair trial. Said publicity was pervasive, prejudicial, and inflammatory. Here we are concerned with the attorney not filing motion for change of venue, after it became apperant that Petitioner could not recieve a fair and impartial trial, and if atorney's deficient performace prejudiced Petitioner? The court asked the panel anyone knows about the case? **(RR Vol.2, pg.30, line:6-23)** Over 70 jurors raised their hands who had personal knowledge of the case. In **(RR. Vol.2, pg.30, line: 23-25.)** 27 people had already made up their minds and could not be fair and impartial. In **(RR.Vol.2, pg.58,1-25,pg.59,1-25 & pg.60,1-25)**, juror no.2 explains in detail about the coverage in the Caller Times. She describes the kidnapping of Petitioner's son, wherein she has formed an opinion as to the violence of the case. Also defense attorney Woener Stated: "he never seen so many people who have made their minds up in a case, even with more publicity. (Vol.2,pg.56,23-24). Defense counsel should immeadiately filed a Motion for Change of Venue realizing from the percentage of potential jurors that had already formed an opinion about the guilt of the Petitioner, that his client could not recieve a fair an impartial trial. "a defendant must show an ability to obtain a fair an impartial trial." Coupled with counsel's disenchanment Petitioner could not have recieved a fair and impartial trial because defense counsel already given up. See, **Williams v. State, 897 S.W.2d 351 (Tex.Crim.App.) cert. denied, 516 U.S. 946, 116 S.Ct.385, 133 L.Ed.2d 307 (1995).** To

GROUND FIVE CONT:

justify a change of venue based on recent and significant amounts of media coverage and that publicity regarding similar cases had the effect of creating greater prejudice, bringing "some afore-thought to people' and making it "very hard" to find a fair and impartial jury. Petitioner's attorney could have called upon a number of potential witnessesa that were listed on the prosecution's witness list for this eventuality. The prosecution was prepared to fight a change of venue motion, witnesses from several television stations, newspapers, and other social media outlets were prepared to testify to the number of potential jurors exposed to these segments. See, **(Appellants Brief Exhibit "C")**. Petitioner's attorney could have produced the requisite affidavits need to bolster his Client's positior See, **(C.R. pg.30,32, and 43)**. Here you have 77 members of the array who have followed the case in the media, who have extensive knowledge of the case, including kidnapping of Petitioner's son, (an offense he was not on trial for), which further excebarrated the coverage and the amount of times this coverage was repeated in a course of a year was astronomical. Therefore, even after the court conducted its vior dire, it was clear from the record that the trial court tried to rehabilitate the remainder of this poisoned panel. we must also bear in mind, that the court was in a unique position of hearing the testimony of the jurors and guaging the sincerity of their responses in light of the publicity about the case. Petitioner was entitled to a change of venue if he could show that the there was influences in the community which could affect answers on the vior dire. There are two things that distinguish this case from others in which a majority of the venire is familiar with the case. First the nature of the publicity is quite different because, Petitioner was a police officer, there was a burglary, a murder, kidnapping, an Amber alert went out, there was a school lockdown, there was a Swat-standoff/hostage situation. News Stations reported widely and did extensive coverage on the day of the offense, and for a year after until the date of trial. Potential jurors had the oppertunity to watch it unfold. Second, a large number of potential jurors could not set-aside their opinion. This strongly indicates that pretrial publicity resulted in actual identifiable prejudice to Petitioner. Also media coverage was not accurate and objective, because it reported an actual kidnapp were there was none. Because Petitioner's attorney not filing the motion for change of venue, it rendered him deficient in his performance, and because of the ommission, it is a probability that the outcome of the trial would have been different. It must be remembered that the court ordered a Gag Order on the case. See, **(CR.pg.30)**. Here we have the acts and ommisssions

GROUND FIVE CONT:

of said attorney , who effectively abandoned his his Client. Said cause should be reversed and remanded.

GROUND SIX:

**TRIAL JUDGE ABUSED HER DISCRETION BY NOT ORDERING A CHANGE OF VENUE AFTER IT BECAME IMPOSSIBLE TO SEAT A JURY THAT WAS UNBIASD IN HIGH PROFILE CASE.**

In change of venue cases; **T.C.C.P. art.31.01**, the trial judge should have filed her own motion to change venue after the vior dire revealed that Petitioner could not recieve a fair and impartial trial. Because the jury that was actually seated was tainted by the rest of the array, along with the fact that this case was tried in the media before the actual jury was pooled. The **Sixth Amendment** gives the Petitoner the right to a fair and impartial trial, it is the presiding judge who conducts the vior dire. It was impossible to seat a jury in this high profile, media driven trial. trial judge abused her discretion. The large number of venire panelist were disqualified for cause, because they could not not set aside their opinions of the Petiioner's guilt. See, **(RR.vol.2,pg. 30,9,22, & pg.31,13-25). See, 14th Amend U.S. Const. Also, V.T.C.C.P. art. 31.03 (a), Mayola v. Alabama, 623 F.2d 992, 998 (5th Cir.1980), Von Byrd v. State, 569 S.W.2d 883, 890-91, Russel v. State, 146 S.W.3d 705,714 (Tex.App-Texarkana 2004) pet. ref'd), Crawford V. State, 685 S.W.2d 343, 349-350.** The number of jurors that were unable to serve on the jury in this case demonstrates the extent of the pretrial publicity had permeated the community. Here out of 100 a large percentage more than ½ could be impartial and already formed their opinions. See, **(RR.Vol.2,pg.31,22-25).** These panelist could not set aside their opionions is reasn enough to consider the entire community 'infected" by the pretrial publicity and prejudice. The inflammatory atmosphere and those actually seated were poisioned by the others. For this reason said cause should be reversed and remanded, and said former trial judge should be taken on vior dire for her acts and ommissions.

GROUND SEVEN:

**INEFFECTIVE ASSISTANCE OF COUNSEL FOR ABANDONING PETITIONER ACTED AS NO COUNSEL AT ALL: ACTING AS MERE FRIEND OF COURT.**

Said counsel abandoned his Client at critical stage of the proceedings. In the toality of representation by defense counsels', Mr. Mark Woerner, Mr. Steve Schiwetz, and Mr. Mark Gonzales abandoned their client. Mr. Woerner at the onset of trial was not concerned about shackling of Client, nor did any other attorney object. Furthermore, Mr. Woerner told the

GROUND SEVEN CONT:

that his client was guilty, which nullified any defense in regard to Count II, and resulted in the jury being biased. A strategy the Petitioner did not approve of, nor able to communicate his disbelief about such remarks that infringed upon his persumption of innocence. the Supreme Court has longed recgonized that 'the right to counsel is the right to effective assistance of counsel'" under the **Sixth Amendment, Strickland v. Washington 466 U.S. 688 (1984);** In this case, we find that the defense counsel did not put up any meaningful defense during the punishment phase, nor file any pretrial motion that Petitioner was never convicted of any felony in this State or any other State, See, **V.T.C.C.P. art.42.12(d)(8)(c)** states: A defendant is eligible for community supervision under this section only if before the trial begins the defendant files a sworn motion to the judge that the defedant has not been previously convicted of a felony in this or any other state, and the jury enter in the verdict a finding that the infor mation is true. See, **(RR.Vol.2,pg.9,1-17).** Because of the forceful argument by State's attorney Mr. McCaig that Petitioner was not eligible for probation, Petitioner's attorney should have researched further in the same code to ascertain that Petitioner was eligible for probation. Furthermore, counsel did not reasonably argue on his client's behalf during punishment phase, espicially in regard to Count II. See, **(RR.Vol.5.pg.126,3-13).** Furthe -more, defense counsel failed to investigate the extensive media coverage, Television Documentary which featured Petitioner in family violence. failed to adequately prepare a defense, nor subject the State's case to the advesa rial testing process, by having fellow police officer's who were having illicit affairs with his wife there to testify. Nor did he interview them, nor have them appear before the court, Officers Noe Roel, Emede Reyes, Buzz esparza, Luis Rene Ozuna, and Frank Estrada. Defense Counsel did produce phone records. See, **Petitioner's appeal brief Exhibit "14-16").** That was the extent of the preperation for the capital murder trial. Furthemore, although court ordered physcological testing of the Petitioner, there was no report by the psychologist included in the record, nor was he called to testify as to the Petitioner's mental state at the time of offense. Once the attorney told the jury his client was guilty, he was wholly unprepared to make a platable defense of his theory, and effectively undermined the persumption of innocence in Count I and Count II. This was no defense at all, but a tactical retreat, and pure abandoment of his client. Even granting deference to counsel's choices, we cannot conclude that he need not undertake further investigation, "before proceeding with an argument he was wholly unprepared to make. **Burger, 107 S.Ct. at 3126.** The Court should find clearly established that Petitioner's counsels' so abandoned their "overarching duty to advocate the Petioner's cause, that the State proceed-

GROUND SEVEN CONT:

-ing were almost non-adversarial. Informing the jury that his client was guilty, permeated that guilt thru both counts and destroyed any persumption of innocence for Count II. Counsel's actions in regard to sentencing in Count II even more clearly indicate the abandonment of his duty of loyalty, by switching from the jury to sentence, to judge, and failed to put on any mitigating factors, and failed to advocate his client's position. The most striking indication of counsel's performance and failure to fufill his duty of loyalty to his client is from his behavior at the trial itself. "Counsel at the summation of the trial , counsel reffered to the diffuculty his client had presented to him. **See, (RR.vol.5.pg.99, line 20-25, Pg.100 line 1-20).** Counsel is in fact telling the jury he could not present any mitigating circumstances, when evidence against his client is so overwhelming. In closing counsel lamenated : **(RR.Vol.5,pg.102,13-16).** Petitioner's attorney did not simply make poor choices; he acted with reckless disregard for his client's case. Whatever the reason the record supports that counsel turned against his client. There is no apperent reason for counsel's behavior, although he repeated many times that his client was guilty and how difficult this case was. This conflict in loyalty unquestionably affected his representation. A defense attorney who abandons his duty of loyalty to his client and effctively helps the State in an effort to obtain a conviction suffers from an obivious conflict of interest. Sich an attorney, like unwanted counsel, ''represent' the defendant only through a legal fiction." See, **Faretta v. California**, 422 U.S. 806,821 (1975). In fact an attorney is burdened by a conflict between his client's interest and his own sympathies to the prosecution's position is considerably worse than an attorney with loyalty to other defendants, because the interests of the State and the defedant are necessarily in opposition. As the Supreme Court has assereted: "The right to effective assitance of counsel is thus the right of the accused to require the prosecution's to survive the crucible of meaniningful adversarial testing... [i]f the process losses its character as confrontation between adversaries, the constitutional guarantee is violated." **See, Cronic,** 466 U.S. at 656-57. Petitioner urges the Court, that reversable error has appeared from the record because of said counsel's deficient performance that prejudiced the outcome of the trial. Said cause should be reversed and remanded.

**Ground Eight:**

**PETITIONER'S COUNSEL FOR DIRECT APPEAL FRED JIMINEZ COMMITTED INEFFEC-ASSISTANCE OF COUNSEL BY PLACING A FRAUD BEFORE THE COURT BY FILING**

GROUND EIGHT CONT:

**FRIVOLOUS BRIEF, FOR SUCH ACTIONS MOTIVATED BY POLITICAL ASPIRATIONS, NEPOTISM, AND THE HIGH PROFILE NATURE OF THE CASE. THE COURT ASSIGNED STEPHEN W. BYRNE AS APPEAL ATTORNEY, RENDERING FRED JIMINEZ'S BRIEF MOOT BY OPERATION OF LAW. STEPHEN W. BYRNE FORCED INDIGENT PETITIONER TO FILE PRO/SE BRIEF WHO IS NOT EDUCATED IN THE LAW.**

Prejudice, whether necessary or not, is established under any applicable standard. Petitioner was charged with several crimes, the State assigned counsel Fred Jiminez to represent him on his direct review of convictions. Fred Jiminez's wife was the District attorney for Nueces County, (Anna Jiminez), whose office prosecuted the Petitioner. Because of the conflict of interest and the high profile nature of the case, said attorney filed a frivolous brief, knowing well that Petitioner's case was filled with meritorious claims. Such insidious intent is demonstrated by the fraudulent document foisted upon the Court as an Anders brief. Because of the political aspirations of Attorney's wife and the high profile nature of the case, who was at the time of the filing of brief embattled with the State over corruption charges while she was in office, said attorney did not bring his legal skill and knowledge to bear. Petitioner would have succeeded . Because Stephen W. Bryne was the counsel chosen to replace Fred Jiminez, because the court was not satisfied with Fred Jiminez's representation. -The purpose of the **Sixth Amend** guarantee is to insure that defendants are represented by counsel and not have to face lybrinth of the criminal justice system unawares. Judicial scrutiny of counsel's performance must be differential (highly). Petitioner urges the Court because the record was fully developed, Petitioner should be allowed to proceed with ineffective assistance of counsel claims as postulated by the opinion in **Trevino v. Thaler,569 U.S._(2013)(citation ommitted).** Because of the conflict of interest **(See, Exhibit "D" Appellate Brief),** and attorneys abandon ing etitioner there is a probability that the outcome would have been different. Because reversible error has appeaared in the record, Petitione urges the Court to allow him to take said attorneys on vior dire to further develop the record, as well as reverse and remand said cause.

**GROUND NINE: PETITIONER'S COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR NOT RAISING AN AFFIRMATIVE DEFENSE OF TEMPORARY INSANITY, AFTER ATTORNEY MADE QUESTION REGARDING PETITIONER'S MENTAL STATE AT THE TIME OF OFFENSE.**

**Criminal Law Keynote-773:** If evidence from any source raises the issue of insanity, the trial court must include an instruction on insanity defense in jury charge.**V.A.A.C.P.art.46.03; V.T.C.A., Penal Code §8.01.**

**GROUND NINE CONT:**

When considered with the facts and circumstances concerning an accused and defense, lay opinion testimony may be sufficient to raise the defense of insanity. **V.T.C.A., Penal Code § 8.01.** During the trial on the merits, Petitioner's counsel raised the issue of Petitioner's mental state that lead up to the commission of the offense. See,(**RR.Vol.5,pg.99 line 25,pg. 100 line 1-20**).From the foregoing by Petitioner's counsel demonstrates that he was of the opinion that his client"snapped." Which is an off color remark of insanity.Petitioner's attorney filed motion for psychological testing which was granted by the court. See, (**CR.pg48**). It appears from the record that counsel was headed towards this defense, then abandoned thi defense, even thou that was the agreement between Petitioner and attorney. Knowing that Petitioner was a former Border patrol Agent, got hurt on this assignment, suffered from Post Traumatic Stress snydrome from this assignment. Also, as an Alice Police Officer, which greatly effected his physcological well being, coupled with the fact that Petitioner's wife was having multiple affairs with Petitioner's co-workers who were Police Officers. Also, the amount of stress that police officers' experience on a day to day level, such amount of stress police officers' on a national level is well documented, and the amount of domestic violence involving officers' and members of the armed Forces in like situations. Petitioner's attorney was derilict in his duty for not preparing for this defense. so, if by moral insanity it be understood only a disorder or perverted state of affections or moral powers of the mind, it cannot soon be disgarded as affording any sheild from punishment for crime: if it can be truly said that one indulges in violent emotions, such as remorse, anger, shame, grief, and the like is afflicted with homocidal insanity, it would be diffucult, yes, impossible, to say where sanity ends, and insanity begins. We say to you, as a result of our refelections on this branch of the subject, that if the prisoner was actuated by an irresistable inclination to kill, and was unable to control or subjugate his intellect... he is entitled to acquittal. (**Mr. Justice Paxson, 88 PA.291,Jan.20,1879**). What then is that form of diease, Dominated Homocidal Mania, which will excuse one for having committed a Murder? Cheif justice Gipson calls it that unseen ligament pressing on the mind and drawing it to the consequences which it under coecerion which, while it results are clearly percieved, is incable of resistance-an invisible inclination to kill. It was error for trial counsel not ask for instruction a punishment stage of trial due to insanity, furthermore, Petitioner's attorney and State's attorney Ms. Dorsey put the charge together, so it was ineffective assitance of counsel that his attorney subjected his client to such eregrious harm both great and apperant. **Ex parte Duffy,** 6

Ground Nine Cont:

S.W.2d 507 (**Tex.Crim.App.1980**). This standard requires that the court evaluate complaint of ineffective assistance at the punishment stage determining first, whether counsel was reasonably likely to render ineffective assistance of counsel, and second, whether counsel reasonabley rendered ineffective assistance. The record is replete with the litanies of the grave and fatal errors committed by counsel in this case. These errors judged by the totality of the repesentation, denied him a fair trial. Merly showing that they had some conceivable effect on the proceedings is inadequate. **Strickland, 466 U.S. at 693.** Petitioner urges the Court to rev. said cause and remand with instructions .

## CONCLUSION

Petitioner would urge the Court, that he falls under the narrow ruling in **Trevino v. Thaler,** wherein the record was fully developed and the errors of his attorney were plain and apperrant. Said trial was overwhelmed by media and public pressure, which resulted in the impossibility to seat a fair and impartial jury/Petitioner was forced to wear leg shackles during the entire trial with no demonstrative reason by trial judge, and counsel did not even object, because he was assisting the State in helping to obtain a conviction. Counsel rendered ineffective assistance on numerous occasions, destroying Petitioner's persumption of innocence when he decided to abandon the temporary insanity defense and just throw his client to the wovles. Petitioners appellate attorney completely missed the double jeopardy issue, and affadavit and information not being signed. as well as was motivated by nepotism and other factors and filed a frivolous brief. From the numerous litanies and acts and ommissions of counsels' in this case. Said cause should be reversed and remanded.

## PRAYER

Petitioner Prays that the Court grant him this PDR and any and all relief requested herein.

## CERTIFICATE OF SERVICE

A true and correct copy was hand delievered to the Nueces County district attorney mark Shurka on 7/ /15. At the Nueces County Courthouse, 901 Leopard St. Corpus Christi, Texas 78401, also Atty,General P.O.Box 12405, Austin, Texas 78711.

Respectfully Submitted,

By: [signature]

Jose Gonzales III #1832029

James v. Allred unit
201 FM 369 N.

Iowa Park, Texas 76367

# APPENDIX

CHIEF JUSTICE
ROGELIO VALDEZ

JUSTICES
NELDA V. RODRIGUEZ
DORI CONTRERAS GARZA
GINA M. BENAVIDES
GREGORY T. PERKES
NORA L. LONGORIA

CLERK
DORIAN E. RAMIREZ

# Court of Appeals

## Thirteenth District of Texas

NUECES COUNTY COURTHOUSE
901 LEOPARD, 10TH FLOOR
CORPUS CHRISTI, TEXAS 78401
361-888-0416 (TEL)
361-888-0794 (FAX)

HIDALGO COUNTY
ADMINISTRATION BLDG.
100 E. CANO, 5TH FLOOR
EDINBURG, TEXAS 78539
956-318-2405 (TEL)
956-318-2403 (FAX)

August 14, 2014

Hon. Adolfo Aguilo Jr.
Assistant District Attorney
Nueces County Courthouse
901 Leopard - Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Hon. Mark Skurka
District Attorney
901 Leopard Street, Room 205
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Hon. Fred Jimenez
Attorney At Law
509 Lawrence, Suite 301
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Mr. Jose Gonzales III
TDCJ #1832029
James V. Allred Unit
2101 FM 369 North
Iowa Park, TX 76367

Re: Cause No. 13-13-00011-CR
Tr.Ct.No. 11-CR-4141-D
Style: JOSE GONZALES III v. THE STATE OF TEXAS

Enclosed please find the opinion and judgment issued by the Court on this date.

Very truly yours,

Dorian E. Ramirez

Dorian E. Ramirez, Clerk

DER:dsr
Enc.
cc: State Prosecuting Attorney (DELIVERED VIA E-MAIL)
105th District Court (DELIVERED VIA E-MAIL)
Hon. Patsy Perez, District Clerk (DELIVERED VIA E-MAIL)
Hon. J. Rolando Olvera Jr., Presiding Judge, 5th Administrative Judicial Region, (DELIVERED VIA E-MAIL)



# THE THIRTEENTH COURT OF APPEALS

13-13-00011-CR

JOSE GONZALES III
v.
THE STATE OF TEXAS

On Appeal from the
105th District Court of Nueces County, Texas
Trial Cause No. 11-CR-4141-D

## JUDGMENT

THE THIRTEENTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be AFFIRMED. The Court orders the judgment of the trial court AFFIRMED.

We further order this decision certified below for observance.

August 14, 2014



**NUMBER 13-13-00011-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**JOSE GONZALES III,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 105th District Court of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza and Benavides**
**Memorandum Opinion by Justice Garza**

A jury found appellant Jose Gonzales III guilty of capital murder, a capital felony offense, *see* TEX. PENAL CODE ANN. § 19.03(a)(2), (b) (West, Westlaw through 2013 3d C.S.), and burglary of a habitation to commit a felony (aggravated assault), a first-degree felony offense. *See id.* § 30.02(a)(3), (d)(1) (West, Westlaw through 2013 3d C.S.). The trial court assessed appellant's punishment for the capital murder offense at life without

parole, *see id.* § 12.31(a)(2) (West, Westlaw through 2013 3d C.S.), and assessed punishment for the burglary of a habitation offense at life imprisonment, with the sentences ordered to run concurrently. Appellant's court-appointed counsel has filed an *Anders* brief. *See Anders v. California*, 386 U.S. 738, 744 (1967). We affirm.

## I. Anders Brief

Pursuant to *Anders v. California*, appellant's court-appointed appellate counsel has filed a brief and a motion to withdraw with this Court, stating that his review of the record yielded no grounds of error upon which an appeal can be predicated. *See id.* Counsel's brief meets the requirements of *Anders* as it presents a professional evaluation demonstrating why there are no arguable grounds to advance on appeal. *See In re Schulman*, 252 S.W.3d 403, 407 n.9 (Tex. Crim. App. 2008) ("In Texas, an *Anders* brief need not specifically advance 'arguable' points of error if counsel finds none, but it must provide record references to the facts and procedural history and set out pertinent legal authorities.") (citing *Hawkins v. State*, 112 S.W.3d 340, 343–44 (Tex. App.—Corpus Christi 2003, no pet.)); *Stafford v. State*, 813 S.W.2d 503, 510 n.3 (Tex. Crim. App. 1991).

In compliance with *High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. [Panel Op.] 1978) and *Kelly v. State*, PD-0702-13, 2014 WL 2865901, at *3 (Tex. Crim. App. June 25, 2014), appellant's counsel carefully discussed why, under controlling authority, there is no reversible error in the trial court's judgment. Counsel has informed this Court, in writing, that counsel has: (1) notified appellant that counsel has filed an *Anders* brief and a motion to withdraw; (2) provided the appellant with copies of both pleadings; and (3) informed the appellant of appellant's rights to file a pro se response,[1] and review the

[1] The Texas Court of Criminal Appeals has held that "the pro se response need not comply with the rules of appellate procedure in order to be considered. Rather, the response should identify for the court those issues which the indigent appellant believes the court should consider in deciding whether the

record preparatory to filing that response. *See Anders*, 386 U.S. at 744; *Kelly*, 2014 WL 2865901, at *3, *Stafford*, 813 S.W.2d at 510 n.3; *see also In re Schulman*, 252 S.W.3d at 409 n.23.

The record shows that appellant was provided a copy of the record on October 21, 2013. After this Court granted several motions for extension of time in which to file his pro se response, appellant filed his pro se response on May 23, 2014.

## II. Independent Review

Upon receiving an *Anders* brief, we must conduct a full examination of all the proceedings to determine whether the case is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80 (1988). When an *Anders* brief and a subsequent pro se response are filed, a court of appeals reviews the entire record, and: (1) determines that the appeal is wholly frivolous and issues an opinion explaining that it finds no reversible error; or (2) determines that there are arguable grounds for appeal and remands the case to the trial court for appointment of new appellate counsel. *Bledsoe v. State*, 178 S.W.3d 824, 826–27 (Tex. Crim. App. 2005). If the court finds arguable grounds for appeal, it may not review those grounds until after new counsel has briefed those issues on appeal. *Id.*

We have reviewed the entire record, counsel's brief, and appellant's pro se response, and we have found nothing that would arguably support an appeal. *See id.* at 827–28 ("Due to the nature of *Anders* briefs, by indicating in the opinion that it considered the issues raised in the briefs and reviewed the record for reversible error but found none, the court of appeals met the requirement of Texas Rule of Appellate Procedure 47.1.");

---

case presents any meritorious issues." *In re Schulman*, 252 S.W.3d 403, 409 n.23 (Tex. Crim. App. 2008) (quoting *Wilson v. State*, 955 S.W.2d 693, 696–97 (Tex. App.—Waco 1997, no pet.)).

*Stafford*, 813 S.W.2d at 509. There is no reversible error in the record. Accordingly, the judgment of the trial court is affirmed.

### III. MOTION TO WITHDRAW

In accordance with *Anders*, appellant's attorney has asked this Court for permission to withdraw as counsel for appellant. *See Anders*, 386 U.S. at 744; *see also In re Schulman*, 252 S.W.3d at 408 n.17 (citing *Jeffery v. State*, 903 S.W.2d 776, 779–80 (Tex. App.—Dallas 1995, no pet.) ("[I]f an attorney believes the appeal is frivolous, he must withdraw from representing the appellant. To withdraw from representation, the appointed attorney must file a motion to withdraw accompanied by a brief showing the appellate court that the appeal is frivolous.") (citations omitted)). We grant counsel's motion to withdraw. Within five days of the date of this Court's opinion, counsel is ordered to send a copy of this opinion and this Court's judgment to appellant and to advise him of his right to file a petition for discretionary review.[2] *See* TEX. R. APP. P. 48.4; *see also In re Schulman*, 252 S.W.3d at 412 n.35; *Ex parte Owens*, 206 S.W.3d 670, 673 (Tex. Crim. App. 2006).

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
14th day of August, 2014.

---

[2] No substitute counsel will be appointed. Should appellant wish to seek further review of this case by the Texas Court of Criminal Appeals, he must either retain an attorney to file a petition for discretionary review or file a pro se petition for discretionary review. Any petition for discretionary review must be filed within thirty days from the date of either this opinion or the last timely motion for rehearing or timely motion for en banc reconsideration that was overruled by this Court. *See* TEX. R. APP. P. 68.2. Any petition for discretionary review must be filed with the clerk of the Court of Criminal Appeals, *see* TEX. R. APP. P. 68.3, and should comply with the requirements of Texas Rule of Appellate Procedure 68.4. *See* TEX. R. APP. P. 68.4.

REQUESTED

EK 932574243 US

R USE ONLY

LEASE PRINT) PHONE

e Gonzales III #01832029
ames V. Allred Unit
2101 FM 369 North
Iowa Park, TX. 76367

T BY ACCOUNT (if applicable)

Y OPTIONS (Customer Use Only)

TURE REQUIRED *Note:* The mailer must check the "Signature Required" box if the mailer: 1) addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's cle or other secure location without attempting to obtain the addressee's signature on delivery.

)ptions

Saturday Delivery (delivered next business day)
iday/Holiday Delivery Required (additional fee, where available*)
30 AM Delivery Required (additional fee, where available*)
fer to USPS.com® or local Post Office™ for availability.

SE PRINT) PHONE

urt of Criminal Appeals
Abel Acosta
Supreme Court Bldg
201 W. 14th St Rm. 106
P.O. Box 12308
U.S. ADDRESSES ONLY) , TX. 78711-2308

ickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
00 insurance included.

UNITED STATES POSTAL SERVICE® | PRIORITY ★ MAIL ★ EXPRESS™

**ORIGIN (POSTAL SERVICE USE ONLY)**

☐ 1-Day ☐ 2-Day ☐ Military ☐ DPO

| PO ZIP Code | Scheduled Delivery Date (MM/DD/YY) | Postage | |
|---|---|---|---|
| 78411 | 8-4-15 | $ 37.00 | |
| Date Accepted (MM/DD/YY) | Scheduled Delivery Time | Insurance Fee | COD Fee |
| 8-3-15 | ☒ 10:30 AM ☐ 3:00 PM ☐ 12 NOON | $ | $ |
| Time Accepted | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transportation Fee |
| 11:26 ☐AM ☐PM | $ | $ 2.80 | $ |
| Weight ☐ Flat Rate | Sunday/Holiday Premium Fee | Total Postage & Fees | |
| lbs. ozs. | $ | $ 39.80 | |
| | Acceptance Employee Initials | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, JANUARY 2014 PSN 7690-02-000-9996 3-ADDRESSEE COPY

T US AT USPS.COM®
R FREE SUPPLIES ONLINE